UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DENISE LUDWIG, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No.: 13-174-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| COMMONWEALTH OF KENTUCKY | ) | **MEMORANDUM OPINION** |
| DEPARTMENT OF MILITARY AFFAIRS, | ) | **&** |
| and KENTUCKY DIVISION OF | ) | **ORDER** |
| EMERGENCY MANAGEMENT, | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Plaintiff Denise Ludwig, an employee of Defendants Commonwealth of Kentucky Department of Military Affair and Division of Emergency Management, brought this employment discrimination action after she was allegedly passed over for a promotion in favor of a male applicant. She claims that she was the victim of sex discrimination and retaliation under the Kentucky Civil Rights Act, as well as wage discrimination on the basis of sex in violation of the Kentucky Equal Pay Act and its federal counterpart. The Commonwealth now moves to dismiss Ludwig's retaliation claim and Kentucky Equal Pay Act claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the foregoing reasons, the Court will GRANT this motion, but will dismiss Ludwig's retaliation claim without prejudice so that, if she so chooses, Ludwig may seek to amend her complaint accordingly.

I

Since November 16, 2007, Denise Ludwig has been a merit-based employee with the

Commonwealth of Kentucky Division of Emergency Management, a part of the Department of Military Affairs.  [Compl., R. 1-3 at ¶ 7].  As part of her job duties, Ludwig prepares for and responds to emergency situations; she also works with county governments to ensure their disaster preparedness.  [R. 1-3 at ¶¶ 8-10].  Ludwig alleges that, in November 2010, she applied for a promotion to the position of Training Development Specialist II, but was passed over for a male applicant, despite the fact that she had more experience than him and had received positive evaluations during her tenure.  [R. 1-3 at ¶ 11].  She was soon reclassified into the position she sought, but she claims that she was paid less than her male counterparts. [*Id.*]  Later, Ludwig claims that the Commonwealth required her to transfer, reduced her pay, and, as of August 16, 2011, demoted her from Training Development Specialist II (a Grade 13 position) to the position she currently holds, Administrative Specialist III (a Grade 12 position).  [Compl., R. 1-3 at ¶ 12-13].  Finally, she claims that she applied for a regional manager position in August 2012, but was again passed over for a less experienced and less qualified male applicant.  [R. 1-3 at ¶ 13].

On August 21, 2013, Ludwig filed a Complaint against the Commonwealth in Pulaski Circuit Court.  [Compl., R. 1-3].  She alleged sex discrimination and retaliation under the Kentucky Civil Rights Act, as well as wage discrimination on the basis of sex in violation of "the federal and state Equal Pay Act, 29 U.S.C. § 206(d)(1), and KRS § 337.423."  [R. 1-3 at ¶ 5]. The Commonwealth removed the action to this Court.  [R. 1].  In response, Ludwig moved to remand, arguing that none of her claims "arose under" federal law.  [R. 5].  This Court found that Ludwig had pleaded claims under both the federal Equal Pay Act, 29 U.S.C. § 206(d)(1), and its Kentucky counterpart, Kentucky Revised Statute (KRS) § 337.423, so it denied her motion to remand.  [R. 12].

The Commonwealth now moves to dismiss Ludwig's retaliation claim and Kentucky

2

Equal Pay Act claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. [R. 2]. The Commonwealth first argues that Ludwig's Complaint fails to set forth sufficient factual allegations to state all elements of a retaliation claim. [Def.'s Mem. Supp. Mot. Dismiss, R. 2-1 at 2-3]. It also contends that Ludwig's Kentucky Equal Pay Act claim is barred by sovereign immunity or, in the alternative, the Act's statute of limitations. [R. 2-1 at 4-5].

II

A

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint which fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, as is now well known, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a plaintiff need not provide "detailed factual allegations," she must advance more than "a formulaic recitation of the elements of a cause of action." *Id.* (citing *Twombly*, 550 U.S. at 555). A court reviewing a 12(b)(6) motion must "accept all the Plaintiffs' factual allegations as true and construe the complaint in the light most favorable to the Plaintiffs," *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005), but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Twombly*, 550 U.S. at 556). Ultimately, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Of particular import here, the *Iqbal* plausibility pleading standard applies equally in the employment

3

discrimination context. *See Keys v. Humana, Inc*., 684 F.3d 605, 608 (6th Cir. 2012).

B

The Commonwealth first argues that Ludwig's Complaint fails to sufficiently describe the Commonwealth's retaliatory conduct, as well as the protected activity that triggered the alleged retaliation.  [Mot. R. 2-1 at 3].  In order to establish a prima facie case of retaliation under the Kentucky Civil Rights Act (KCRA), a plaintiff must show:

> (1) that [the] plaintiff engaged in an activity protected [the Act]; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004) (citing *Christopher v. Stouder Memorial Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991), *cert. denied*, 502 U.S. 1013 (1991)).  Kentucky courts interpret retaliation under the KCRA in a manner "consistent with the interpretation of unlawful retaliation under federal law." *Brooks*, 132 S.W.3d at 802; *see also Brewer v. Gen. Drivers, Warehousemen & Helpers Local Union 89*, 190 F. Supp. 2d 966, 973 (W.D. Ky. 2002).

Relevant here, an employee engages in "protected activity" when she "contest[s] any unlawful employment practice." *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1313 (6th Cir. 1989).  "Protected activity" under the KCRA encompasses two types of conduct: "(1) 'participation in a proceeding with the Equal Employment Opportunity Commission' and (2) 'opposition to an apparent Title VII [or KCRA] violation.'" *Sullivan v. Paycor, Inc*., 2013 U.S. Dist. LEXIS 73169, *10, 2013 WL 2286069 (W.D. Ky. May 23, 2013) (alteration in original) (citing *Wasek v. Arrow Energy Servs. Inc.*, 682 F.3d 463, 469 (6th Cir. 2012)).

In her three-paragraph retaliation claim, Ludwig alleges that her employer "retaliated

4

against [her] because has had [sic] opposed a practice declared unlawful under the Kentucky

Civil Rights Act." [Compl., R.1-3 at ¶ 22]. This sentence – which constitutes the entirety of

Ludwig's substantive retaliation claim – is a legal conclusion "couched as a factual allegation,"

which this Court is not bound to accept. *Iqbal*, 556 U.S. at 570 (citing *Twombly*, 550 U.S. at

555).

Elsewhere in her Complaint, however, Ludwig sets forth additional factual allegations.

She articulates a number of adverse employment actions that could plausibly provide a basis for

retaliation under the Act. She alleges that, when she was reclassified as a Training Development

Specialist II, she was paid less than her male counterparts for the same work. [Compl., R. 1-3 at

¶ 11]. She also alleges she was transferred and demoted about a year after her application for the

Training Development Specialist position was denied. [R. 1-3 at ¶ 12; *see* R. 1-3 at ¶ 11 (noting

that Ludwig applied for the position in November of 2010, and she was allegedly demoted as of

August 16, 2011)].

Even if these allegations sufficiently set forth an "adverse employment action," however,

Ludwig's Complaint is silent as to any "protected activity" that triggered the Commonwealth's

alleged retaliation. Instead, Ludwig identifies these activities in her Response brief, where, for

the first time, she claims that the retaliation was "prompted by her opposition to her employer's

hiring decision and complaints she made at or around that time" and alleges that the retaliation

occurred "because she sought a promotion to a managerial position that has been almost

exclusively held by men." [Pl.'s Resp., R. 15 at 5].

The facts in the Complaint – and not the extraneous ones in Ludwig's Response brief –

are the focus of a 12(b)(6) inquiry. *E.g. In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes

Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 842 (S.D. Ohio 2012) (internal quotation marks

omitted) (citing *Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Ludwig's Complaint is devoid of any reference to Ludwig's alleged protest of the hiring decision or any other opposition that she may have expressed. And the only relevant facts she sets forth in her Complaint – that she was passed over for two promotions, demoted, and paid less than her male counterparts in two positions – are, at best, isolated adverse employment actions. Even when allowing reasonable inferences in Ludwig's favor, the Court is left to speculate about what exactly Ludwig did to trigger the retaliation she claims she experienced, much less what causal connection might exist between that activity and the alleged retaliation. Without any factual allegation that she engaged in a protected activity – an essential element of retaliation under the KCRA – this Court cannot reasonably infer that the Commonwealth engaged in unlawful retaliation against her. *Cf. Katoula v. Detroit Entm't, LLC*, 557 Fed. App'x 496, 499 (6th Cir. 2014) (finding that plaintiffs' FMLA retaliation claim did not survive a 12(b)(6) claim since they failed to identify any protected activity in their complaint); *Taylor v. J.P. Morgan Chase Bank, N.A.*, 2014 U.S. Dist. LEXIS 1931, *38, 2014 WL 66513 (E.D. Ky. Jan. 8, 2014) (dismissing a § 1981 retaliation claim since the "complaint [was] completely devoid of any mention of a protected activity taken by [the plaintiff]"). Within the four-corners of her Complaint, Ludwig fails to state a claim for retaliation that is "plausible on its face." *Iqbal,* 556 U.S. at 678.

However, because it appears that additional facts, if properly pleaded in an amended Complaint, could cure this defect, the Court will dismiss Ludwig's retaliation claim without prejudice and will entertain a motion to amend her Complaint as to this claim, should Ludwig elect to file such a motion. In dismissing this claim without prejudice, however, the Court takes

no position as to whether these additional facts would satisfy the 12(b)(6) standard.

C

The Commonwealth next argues that Ludwig's Kentucky Equal Pay Act claim is barred by its sovereign immunity defense, or alternatively, by the Act's statute of limitations.

1

"The doctrine of sovereign immunity sweeps broadly" to shield the Commonwealth and its agencies from suit, unless it is expressly waived by the Kentucky General Assembly. *Withers v. Univ. of Kentucky*, 939 S.W.2d 340 (Ky. 1997). Kentucky courts will find such a waiver only "where stated 'by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction.'" *Withers*, 939 S.W.2d at 346 (quoting *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)).

Only one Kentucky court – in an unpublished opinion – has addressed whether the legislature waived the Commonwealth's sovereign immunity in the context of the Kentucky Equal Pay Act. *Simpson v. Lexington-Fayette Urban Cnty. Gov't*, 2003 WL 22220255, 2003 Ky. App. Unpub. LEXIS 701 (Ky. Ct. App. Sept. 26, 2003) (unpublished).[1] The plaintiff in *Simpson* brought a Kentucky Equal Pay Act claim against LFUCG, claiming wage discrimination on the basis of sex. The court analyzed the statute and noted that – unlike the KCRA, which expressly extends liability to "the state, any of its political or civil subdivisions or agencies"[2] and waives the Commonwealth's sovereign immunity[3] – the State and its political subdivisions were conspicuously absent from the Kentucky Equal Pay Act's definition of "employer." *Id.* at *11

---

[1] *See also Tiller v. Univ. of Kentucky*, 55 S.W.3d 846, 850 (Ky. Ct. App. 2001) (stating in dicta that "KRS Chapter 337 contains no waiver of immunity for wage discrimination claims against the Commonwealth"); *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. CIV.A. 06-299-JBC, 2007 WL 101862, at *1 (E.D. Ky. Jan. 10, 2007) (following *Tiller*'s dicta in the context of the Kentucky Wage and Hour Act).

[2] KRS § 344.010(1).

[3] *Dep't of Corr. v. Furr*, 23 S.W.3d 615, 617 (Ky. 2000) (confirming that the Commonwealth is not protected by sovereign immunity under the KCRA).

(citing KRS § 337.420).[4]  The court found that the General Assembly had not included an express waiver in the statute, so the Commonwealth retained immunity for claims under the Kentucky Equal Pay Act.  *Id.*

Ludwig first argues that Kentucky's Equal Pay Act expressly includes state employees within its protections.[5]  However, the *Simpson* Court declined to accept this argument, reasoning that – regardless of the definition of "employee" – the Act's definition of "employer" intentionally omitted the state and its entities.  *Simpson*, 2003 WL 22220255 at *11.

Ludwig also points out that Kentucky's Equal Pay Act largely mirrors its federal counterpart at 29 U.S.C. § 206(d)(1).  She notes that the language of the Kentucky Act echoes that of its federal counterpart,[6] and under both Acts, the definition of "employee" extends to individuals employed by the state.[7]  Indeed, the Kentucky Equal Pay Act directly references its federal counterpart and provides that the Federal Act may apply in lieu of the State Act when the Federal Act "imposes comparable or greater requirements."  KRS § 337.420(1).  Ludwig claims that because Kentucky courts have concluded that the state and federal Equal Pay Acts are "co-extensive," this Court should follow federal decisions interpreting the federal Act when construing sovereign immunity under Kentucky's Equal Pay Act.  [Pl.'s Resp. Mot. Dismiss, R.

---

[4] The Act defines "employer" as "a person who has two (2) or more employees within the state . . . ." KRS § 337.420(2).  In turn, a "person" is defined as "one (1) or more individuals, partnerships, corporations, legal representatives, trustees, trustees in bankruptcy, or voluntary associations." KRS § 337.420(7).

[5] Under the Kentucky Equal Pay Act, "'Employee' means any individual employed by any employer, *including but not limited to individuals employed by the state or any of its political subdivisions, instrumentalities, or instrumentalities of political subdivisions*." KRS § 337.420(1) (emphasis added).

[6] *Compare* 29 U.S.C. § 206(d)(1) ("No employer . . . shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ."), *with* KRS § 337.423(1) ("No employer shall discriminate between employees in the same establishment on the basis of sex, by paying wages to any employee in any occupation in this state at a rate less than the rate at which he or she pays any employee of the opposite sex for comparable work on jobs which have comparable requirements relating to skill, effort and responsibility.").

[7] 29 U.S.C. § 203(e)(2)(C) (defining "employee" to include "any individual employed by a State or a political subdivision of a State").

15 at 8]. Significantly, under the Federal Equal Pay Act, states are not shielded by sovereign immunity. *See Kovacevich v. Kent State Univ.*, 224 F.3d 806 (6th Cir. 2000) (holding that the Equal Pay Act constituted a proper abrogation of Eleventh Amendment immunity); *Timmer v. Mich. Dep't of Commerce,* 104 F.3d 833 (6th Cir. 1997).

The federal and state Equal Pay Acts are admittedly similar in construction and purpose. But no Kentucky authority definitively links the two statutory schemes and their respective interpretations. Although Ludwig claims that Kentucky relies on federal law to interpret the Equal Pay Act, the cases she cites[8] actually relate to the Kentucky Civil Rights Act and its federal counterpart, Title VII of the Civil Rights Act of 1964. The overarching policies in those two statutes may be similar, but the KCRA's proof structure, statutory language, and – according to the *Simpson* Court – scope of liability are distinct from the Equal Pay Act. As yet, no Kentucky court has expressly turned to federal law to interpret the state Equal Pay Act. Indeed, the Kentucky Court of Appeals in *Simpson* did not reference or rely upon federal law in its analysis of the KCRA.

This court is ever mindful of the importance of comity and the principle that questions of Kentucky law are reserved to Kentucky courts. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (citations omitted) ("[F]ederal courts 'must proceed with caution' when making pronouncements about state law."). The interests of comity are particularly critical in the context of the sovereign immunity question at issue here. *See Crawford*, 2007 WL 101862 at *2 (E.D. Ky. Jan. 10, 2007) (citing *Withers*, 939 S.W.2d at 342) ("The need for comity is even more pressing than usual in this matter because Kentucky courts have long 'struggled with whether various governmental entities are entitled to the protection of sovereign immunity.'"). Without

---

[8] *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814 (Ky. 1992); *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95 (Ky. Ct. App. 2000).

any other definitive authority on point, this Court is constrained to follow *Simpson* and find that sovereign immunity shields the Commonwealth from Ludwig's Kentucky Equal Pay Act claim. Accordingly, that claim must be dismissed.[9]

2

The Court next addresses Ludwig's *federal* Equal Pay Act claim.  In its Order denying Ludwig's motion to remand, this Court expressly determined that Ludwig had included a federal claim under the Federal Equal Pay Act in her Complaint.  [*See* R. 12].  The Commonwealth, however, has confined its motion to dismiss to "Plaintiff's claims for violations of KRS 344.280 (Retaliation) and KRS 337.423 (Equal Pay)" and has not advanced any arguments seeking dismissal of Ludwig's federal claim.  [Def.'s Mot. Dismiss, R. 2-1 at 1]. The Court notes that Congress has abrogated states' sovereign immunity under the federal act, *Kovacevich v. Kent State Univ.*, 224 F.3d 806 (6th Cir. 2000), so the Commonwealth is not immune from Ludwig's federal Equal Pay Act claim.  Accordingly, Ludwig's federal Equal Pay Act claim remains intact.

III

Accordingly, for the aforementioned reasons, it is hereby **ORDERED** as follows:

1.  The Commonwealth's Partial Motion to Dismiss [R. 2] is **GRANTED**;

2.  Plaintiff Denise Ludwig's claim for retaliation under the Kentucky Civil Rights Act, KRS § 344.280, is **DISMISSED WITHOUT PREJUDICE**; and

3.  Plaintiff Denise Ludwig's claim under the Kentucky Equal Pay Act, KRS § 337.423, is **DISMISSED WITH PREJUDICE**.

---

[9] Having dismissed Ludwig's claim under the Kentucky Equal Pay Act, the Court need not consider the Commonwealth's alternative argument regarding the statute of limitations.

10

This the 23rd day of January, 2015.

Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**